F H F D

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

03 JUL 29 PM 2: 33

U.S. DISTRICT COURT
N.D. OF ALABAMA

PATRICIA ANN HURLEY    ]
                                   ]
    Plaintiff,             ]
                                     ]
    vs.                      ]     Case No. CV 02 BE-0668-S
                                       ]
UNIFIRST CORPORATION,   ]
                                       ]
    Defendant.        ]

**ENTERED** *pc*

JUL 29 2003

### MEMORANDUM OPINION

     This case is before the court on Defendant's Motion for Summary Judgment (Doc. 14). The court held a hearing on this motion on April 16, 2003. The court, having considered the briefs and evidentiary submissions and having heard oral arguments on this motion, finds that Defendant's Motion for Summary Judgment (Doc. 14) is due to be GRANTED on Plaintiff's FMLA claims and that Plaintiff's state law claims are due to be DISMISSED WITHOUT PREJUDICE.

**I.**    **SUMMARY OF FACTS**[1]

    **A.**    **Background**

---

    [1]The facts set out below are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See* Information Sys. & Network Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See* Cox v. Adm'r U.S. Steel & Carnegie Pension Fund, 17 F.3d 1386, 1400 (11th Cir. 1994).

1



UniFirst is a nation-wide uniform supply company. UniFirst has an office located at 907 Third Avenue North in Birmingham, Alabama, where Plaintiff was employed at all times relevant to this litigation. The closest UniFirst office to its Birmingham facility is in Montgomery, Alabama, which is approximately 90 miles from the Birmingham office. At no relevant time has UniFirst employed 50 or more employees at its Birmingham facility. From the beginning of 2001 until April 27, 2002, UniFirst's Birmingham office employed a maximum of 48 employees (on July 28, 2001) and a minimum of 34 employees (on January 13, 2001). On October 9, 2001, the beginning date of Plaintiff's leave of absence, UniFirst's Birmingham payroll totaled 44 employees. UniFirst does not employ any other people in the 75-mile radius surrounding its Birmingham office.

Plaintiff began working for UniFirst's predecessor, Howard's Uniforms, in Birmingham in 1983. During her employment with UniFirst[2], Plaintiff worked as a monogrammer, rolled mats, worked on a sewing machine and in shipping. Plaintiff worked at the same worksite throughout her employment with UniFirst.

**B.    Plaintiff's Medical Leave of Absence**

On October 9, 2001, Plaintiff began a leave of absence from UniFirst to recover from surgery on her elbow for a non-work-related condition. To initiate her leave, Plaintiff provided Janet Norris, the Human Resources Manager at UniFirst's Birmingham office, with a note from Dr. William Garth, her surgeon, stating she should be excused from work from October 9, 2001 until February 9, 2002 to recuperate from her surgery.

---

[2]UniFirst purchased Howard's Uniforms in 1998, while Plaintiff was employed at Howard's. For the sake of clarity, Plaintiff's employer will be described as "UniFirst" regardless of whether her actual employer at the time was Howard's or UniFirst.

On October 19, 2001, Norris completed a "Personal Medical/Short Term Disability Leave" form ("Leave Form") in connection with Plaintiff's leave request. Plaintiff testified she did not receive this form until the first week of February 2002. The Leave Form purported to give Plaintiff "basic information about some of [her] rights and obligations under the [Company's FMLA] Policy and the FMLA." The Leave Form also stated that under the Company's FMLA Policy and the FMLA itself, she was entitled to 12 weeks of leave if she otherwise qualified for leave. This provision for FMLA leave is consistent with the FMLA leave provisions contained in UniFirst's applicable employee handbook, which also provided for 12 weeks of unpaid leave for FMLA-eligible employees.[3] Plaintiff admitted that no one at UniFirst ever indicated to her that she was entitled to more than 12 weeks of leave under the its FMLA policy. Under UniFirst's FMLA policy and the provisions of the FMLA, Plaintiff's 12-week FMLA leave, which started on October 9, 2001, expired on January 2, 2002, approximately one month before Plaintiff claims she received the Leave Form.

On the third page of the leave form, Norris indicated, based on the note provided by Dr. Garth, that Plaintiff's leave would commence on October 9, 2001. In the blank following the phrase "you are currently expected to return to work on you regular schedule on _____", Norris wrote "2-9-01,"[4] the first date Plaintiff could possibly return to work under Dr. Garth's first note.

Because Plaintiff's condition did not arise from her employment at UniFirst, Plaintiff also

---

[3]Both the Leave Form and the UniFirst employee handbook provided that an employee who returns to work following an FMLA leave of up to 12 weeks would be entitled to restoration to his previous position. However, the Leave Form provided that an employee who returns after her 12 weeks of FMLA eligibility have expired could be terminated and would be terminated if the leave extended past 13 weeks.

[4]Under the circumstances, Norris probably intended to write "2-9-02" instead of "2-9-01."

qualified for insurance benefits under UniFirst's short-term disability policy.  Under this policy, which was set forth in UniFirst's employee handbook, Plaintiff, as an hourly employee, was entitled to a maximum thirteen (13) weeks of benefits subject to providing medical certification of her need for leave.  The 13 weeks of benefits provided to Plaintiff under this policy expired on January 9, 2002.  Plaintiff was apprized on her Leave Form that any leave under UniFirst's short-term disability policy would "be considered as part of the 12 weeks of Leave granted by the Family and Medical Leave Act Policy."  Plaintiff also testified she understood that the leave she took under the short-term disability policy counted against her 12 weeks of FMLA leave. The Leave Form also provided that if Plaintiff was unable to return to work at the expiration of her 12-week FMLA leave but became able to work during the one-week window before the expiration of her 13-week benefit period under UniFirst's short-term disability policy, UniFirst would "determine whether to rehire [her] . . .based on the Company's assessment of its business needs and other factors it considers relevant."  Finally, the Leave Form provided that if Plaintiff was unable to return to work after her 13-week short term disability period, she would "cease to be an employee of the Company."

Plaintiff's 12-week leave of absence under UniFirst's FMLA policy expired on January 2, 2002, when she had not been released to return to work.  On January 9, 2002, 13 weeks following the initiation of her leave of absence, Plaintiff's short-term disability benefit period expired.  At that time, Plaintiff still had not been released to return to work by her physicians.

### C.    Plaintiff's Termination for Exceeding Her Allowed Leave.

On January 15, 2002, 13 days after Plaintiff's leave reached the 12-week mark and 6 days after Plaintiff exhausted her short-term disability benefits,  Maureen VonFritzringer, a Senior

4

Benefits Administrator in UniFirst's corporate office in Wilmington, Massachusetts, e-mailed Janet Norris regarding Plaintiff's work status. Ms. VonFritzringer indicated that "Patricia has been out on STD for 13 weeks as of January 9, 2002" and stated that if Plaintiff had not returned to work, she should be terminated effective January 9, 2002. Defendant alleges that, because Plaintiff had not returned to work (and could not return to work per her physicians), she was terminated on January 24, 2002, with an effective date of January 9, 2002 (the day her short-term disability benefits expired).

On February 1, 2002, more than four weeks after her FMLA leave expired and more than three weeks after her short-term disability benefit period expired, Plaintiff provided UniFirst with another note from Dr. Garth that stated she was "unable to work until rechecked in two months." Plaintiff agreed with Dr. Garth's assessment that she could not return to work as of February 1, 2002.[5]

Notwithstanding that her 12-week leave under the FMLA expired on January 2, 2002 and her short-term disability leave expired on January 9, 2002, Plaintiff testified that she understood that she would not be terminated if she were released to return to work at UniFirst by February 9, 2002. Plaintiff's belief that she would be not terminated if she did not return by February 9, 2002 was based on two sources. First, Plaintiff testified that her physician, Dr. Garth, indicated that she might be able to return to work as of that date. Second, Plaintiff claims that UniFirst informed her, through the Leave Form, that she would be terminated if she did not return to work by February 9, 2002. However, as is stated above, Plaintiff admits she did not receive the Leave

---

[5]Plaintiff also testified that she would not have been able to work light duty until her doctor released her to work with restrictions on February 8, 2002. (Plaintiff depo., p. 191).

Form until early February 2002, after she provided UniFirst with Dr. Garth's note of February 1, 2002 and after she knew she had been terminated.

Plaintiff testified that no one at UniFirst ever informed her, either verbally or in writing, when her leave would end prior to her receipt of the Leave Form in early February 2002. Plaintiff testified she believed that UniFirst had decided to terminate her employment before she ever received this notice. Moreover, Plaintiff testified that she had already learned that she had been terminated before she ever received the note regarding her leave. Defendant notified Plaintiff that she was terminated in the first week of February 2002, when Plaintiff called to request an extension to her short-term disability leave.

Armed with the knowledge that she had been terminated because of her inability to return to work by January 9, 2002, Plaintiff called Dr. Garth. On February 7, 2002, Dr. Garth provided Plaintiff with a letter that stated that Plaintiff was being released to "return to light duty work only."[6] This note from Dr. Garth constituted the first time Plaintiff had been released to work in any capacity after her surgery on October 8, 2001.

**D.      Plaintiff's At-Will Employment Status**

Plaintiff was an at-will employee throughout her employment at UniFirst.  In her deposition, Plaintiff acknowledged that in August 2000 she received and read UniFirst's employee handbook, which provided that she was an at-will employee in clear and unambiguous terms. Immediately above Plaintiff's signature acknowledging receipt of UniFirst's employee

---

[6]UniFirst typically does not allow employees who suffer non-work-related injuries to return to work until they have received a full release to do so from their physicians.  Because Plaintiff admitted in her Short-Term Disability application that her elbow injury did not arise out of her work, she likely would not have been entitled to return to work on February 8, 2002 on light duty, even if she had not already been terminated.

handbook (which was on the last page of the handbook) is a provision which states that Plaintiff's at-will employment status was the only portion of the employee handbook which was not subject to modification:

> While we intend to continue the policies, rules and benefits described in this handbook, **the company may always modify or vary from the matters set forth in this handbook at its discretion, except for the right of the parties to terminate employment-at-will which may only be modified by an express written agreement signed by both parties**.

( DX-2 to Plaintiff's depo.)(emphasis added).

Plaintiff acknowledged in her deposition that the above-quoted portion of UniFirst's employee handbook gave it absolute ability to change every term contained therein other than her at-will status. In addition to acknowledging these provisions in UniFirst's employee handbook, Plaintiff testified she was an at-will employee throughout her employment with UniFirst. Plaintiff also acknowledged she understood what it meant to be an at-will employee.

### E.     Plaintiff's Claims in this Lawsuit

Plaintiff filed this lawsuit on March 14, 2002, claiming that UniFirst terminated her in violation of the FMLA. Plaintiff also asserted state law claims that UniFirst defrauded her and breached an alleged contract with her by terminating her employment. In her deposition, Plaintiff testified that her FMLA and breach of contract claims center on a termination review provision in the UniFirst employee handbook. Specifically, the handbook, which is subject to variance or modification at UniFirst's discretion, states that an employee who has been terminated can ask for a review of his or her termination within ten days of such termination. Plaintiff claims that because she was informed of her termination more than ten days after the

7

effective date of the same, she could not exercise the option of requesting a review of her termination. Plaintiff admits that UniFirst's handbook allows it to ignore the discharge review provision contained therein, but argues "I don't think it's a good idea." Plaintiff's fraud claim is based solely on Norris's handwritten notation on the Leave Form (which she received after her termination) that she was expected to return to work on February 9, 2001.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases when no genuine issues of material fact are presented and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The fact that the parties do not agree on each and every fact is not significant; the law requires only that "there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). *See also* Celotex v. Catrett, 477 U.S. 317, 327 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 251-52. Mere speculation is insufficient to create an issue of fact and defeat a properly-supported motion for summary judgment. *See* Ramsey v. Leath, 706 F.2d 1166, 1169-70 (11th Cir. 1983). However, all reasonable doubts about the facts should be resolved in favor of the non-movant. *See* Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990)(*citing* Anderson, 477 U.S. at 252).

## III.   PLAINTIFF'S FMLA CLAIMS

In Count One and Count Two of her Complaint (Doc. 1), Plaintiff claimed that Defendant violated the FMLA, 29 U.S.C. §§ 2601 *et seq*., with respect to her termination on January 9, 2002. Defendant's primary argument in support of summary judgment is that Plaintiff was not

8

an "eligible employee" under the FMLA because of the small size of her workplace; therefore, Defendant argued, this court does not have subject matter jurisdiction over Plaintiff's FMLA claims. The question before this court is whether Defendant meets the statutory definition of an "employer" under the FMLA, and, if not, whether the FMLA may nevertheless be extended to afford Plaintiff protection under the Act.

"Congress enacted the FMLA 'to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in family integrity.'" Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791, 795 (11th Cir. 2000)(*quoting* 29 U.S.C. § 2601(b)(1)). Under the FMLA, eligible employees may take up to 12 weeks during any 12-month period for birth or adoption of a child, for the care of a parent, spouse, or child with a medical condition, or for the employee's own medical reasons. *See* Brungart, 231 F.3d at 795 (*citing* 29 U.S.C. § 2601(b)(2); 29 U.S.C. § 2612(a)(1)). The FMLA's definition of an "employer" encompasses "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding year..." 29 U.S.C. § 2611(4). Further, Congress specifically defined the FMLA's coverage to exclude "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50."   29 U.S.C. § 2611(2)(B)(ii).

In this case, although Defendant is a nationwide company, its closest office to its Birmingham facility, where Plaintiff worked, is in Montgomery, Alabama, which is approximately 90 miles from the Birmingham office.   At no relevant time has Defendant

9

employed 50 or more employees at its Birmingham facility. From the beginning of 2001 until April 27, 2002, Defendant's Birmingham office employed a maximum of 48 employees (on July 28, 2001) and a minimum of 34 employees (on January 13, 2001).  On October 9, 2001, the beginning date of Plaintiff's leave of absence, Defendant's Birmingham payroll totaled 44 employees.  Defendant does not employ any other people in the 75-mile radius surrounding its Birmingham office.   Therefore, the plain language of the FMLA excludes Defendant's office from coverage under the Act.

"If a district court lacks subject matter jurisdiction over a claim, that claim cannot provide a basis for imposing liability, and it necessarily follows that the claim states no violation of federal law." Wascura v. Carver, 169 F.3d 683, 685 (11th Cir. 1999).  Where an employer does not meet the statutory definition under the Act, the court does not have subject matter jurisdiction. *See* Wascura, 169 F.3d at 685 (*citing* Douglas v. E.G. Baldwin & Assocs., Inc., 150 F.3d 604, 608 (6th Cir. 1998)).  "'If the Court were to exercise jurisdiction where the employer does not meet the statutory prerequisite, it would effectively be expanding the scope of the [FMLA], and the scope of our limited [federal question] jurisdiction as defined by Congress..." *Id* (alteration in original).  *See also* Brungart, 231 F.3d at 796 (holding that 29 C.F.R. § 825.110(d) was unconstitutional under *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984), because it converted "ineligible employees into eligible employees, contrary to the express language of the FMLA).

While this court does not have subject matter jurisdiction over Plaintiff's claims under the plain meaning of the FMLA, this court nevertheless finds appealing Plaintiff's argument that Defendant should be estopped from denying her eligibility for FMLA leave.  Plaintiff argues that

10

UniFirst is estopped from denying that Plaintiff was an eligible employee because she "reasonably relied to her detriment" on UniFirst's alleged failure to notify her she was not eligible for FMLA protection.[7]  Indeed, the court does not condone Defendant's policy of providing its employees documents purporting to outline their rights and obligations under the FMLA and including a section concerning the FMLA in the employees' handbook while at the same time arguing that the court does not have subject matter jurisdiction under the Act because it is not an "employer" within the meaning of the Act.

A plaintiff asserting equitable estoppel must generally show that defendant made a misrepresentation, that plaintiff reasonably relied on the misrepresentation, and that plaintiff suffered a detriment as a result of her reliance. *See* Heckler v. Community Health Serv., 467 U.S. 51, 59 (1984). Even though this court would consider affording Plaintiff protection under the FMLA based on an estoppel argument despite this court's lack of subject matter jurisdiction, the court finds that Plaintiff cannot assert her detrimental reliance argument because she does not dispute that she would have needed 17 weeks of leave (5 more than allowed by the FMLA) even if she was eligible for leave under the FMLA. *See* Brungart, 231 F. 3d at 797 n. 4 (noting that an estoppel by reliance argument, even if theoretically available, was inapplicable where plaintiff would have needed to take the leave at issue regardless of her eligibility under the

---

[7]Plaintiff bases her argument on dicta contained in Dormeyer v. Comerica Bank-Illinois, 223 F.3d 579, 582 (7th Cir. 2000), in which the Seventh Circuit speculated that an employer, under the right circumstances, could conceivably be estopped from denying an employee's eligibility under the FMLA if the employee reasonably relied to his or her detriment on the employer's failure to inform the employee that he or she was not covered. In *Brungart*, the Eleventh Circuit expressly declined to state whether it would adopt such an estoppel argument. 231 F. 3d at 797 n. 4. However, the court noted that such an argument could not be presented in that case because the plaintiff admitted she would have taken the requested leave regardless of her knowledge regarding her eligibility under the FMLA. *Id.*

11

FMLA).

Because this court finds that Defendant is not an "employer" under the plain language of the FMLA and thus Plaintiff is not an "eligible employee," and because, alternatively, this court finds that Plaintiff has not met her burden of establishing detrimental reliance in her estoppel argument, the court hereby GRANTS Defendant's Motion for Summary Judgment (Doc. 14) on Plaintiff's FMLA claims and hereby DISMISSES Plaintiff's FMLA claims WITH PREJUDICE, with costs taxed as paid.

## IV.   PLAINTIFF'S STATE LAW CLAIMS

The next issue before the court is whether, having granted summary judgment on Plaintiff's federal claims, this court may decline to exercise supplemental jurisdiction on Plaintiff's remaining state law claims. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." In this case, Plaintiff asserted state law claims for breach of contract (Count Three) and fraud (Count IV).

In Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999), the court held that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. The court noted that "'if the federal claims are dismissed prior to trial, Gibbs strongly encourages or even requires dismissal of state claims.'" Mergens, 166 F.3d at 1119 (quoting L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 428 (11th Cir. 1994) and citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). The Eleventh Circuit affirmed the district court's decision to decline jurisdiction over Plaintiff's state law claims, stating that "[a]s all of the federal claims were dismissed before trial, the district court

12

appropriately declined to exercise supplemental jurisdiction..." *Id.*

Because this case has not yet proceeded to trial and because the court dismissed Plaintiff's federal FMLA claims based on lack of federal subject matter jurisdiction, this court declines to exercise supplemental jurisdiction over Plaintiff's state law claims for breach of contract (Count Three) and fraud (Count IV). Plaintiff's state law claims are hereby DISMISSED WITHOUT PREJUDICE, with costs taxed as paid.

### CONCLUSION

The court, having found that Defendant is not an "employer" within the meaning of the FMLA, hereby GRANTS Defendant's Motion for Summary Judgment (Doc. 14) on Plaintiff's FMLA claims and hereby DISMISSES Plaintiff's FMLA claims WITH PREJUDICE, with costs taxed as paid. Concerning Plaintiff's remaining state law claims, this court declines to exercise supplemental jurisdiction and hereby DISMISSES WITHOUT PREJUDICE Plaintiff's state law claims for breach of contract (Count Three) and fraud (Count IV). A separate order that summarizes the decisions of this memorandum opinion has been filed simultaneously with the clerk of court.

DONE and ORDERED this 27 day of July, 2003

KARON O. BOWDRE
United States District Judge

13